UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 1:24-cr-00567 |
| DIRK HUGO, | Judge Martha M. Pacold |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Before the court are several motions and other filings made by defendant Dirk Hugo, who has elected to represent himself. *See* [55], [56], [57], [58], [59], [62], [74], [75], [76], [77], [78], [79], [80], [81].[1] For the reasons explained below, each motion (and, to the extent they seek relief, other filing) is denied.

**STATEMENT**

Defendant Dirk Hugo, who is representing himself, has filed a number of motions and other filings that are now before the court. Because several fillings have similar names, the court will quote the exact title of each motion and include docket citations for each.

**I.  "Motion to Dismiss for Lack of Subject Matter Jurisdiction," [55]**

Hugo's "motion to dismiss for lack of subject matter jurisdiction," [55], is denied. Although Hugo is correct that "[t]he district courts of the United States are courts of limited jurisdiction," *Badgerow v. Walters*, 596 U.S. 1, 7 (2022), he is not correct that this case falls outside the court's limited subject-matter jurisdiction. That jurisdiction is "defined (within constitutional bounds) by federal statute." *Id.* Congress has vested "the district courts of the United States" with "original jurisdiction" over "all offenses against the laws of the United States." 18 U.S.C. § 3231. This case clearly falls within § 3231's jurisdictional grant, because Hugo is charged with an offense against the laws of the United States—namely, violation of 18 U.S.C. § 922(g)(1). And that jurisdictional grant is consistent with the Constitution, which (1) "extend[s] "[t]he judicial power . . . to all cases, in law and equity, arising under . . . the laws of the United States," U.S. Const. art. III, § 2, cl. 1;

---

[1] Bracketed numbers refer to docket entries and are followed by page or paragraph number citations. Page numbers refer to the CM/ECF page number.

(2) "vest[s]" that "judicial power . . . in such inferior courts as the Congress may from time to time ordain and establish," *id.* § 1; and (3) grants Congress the "power . . . [t]o constitute tribunals inferior to the Supreme Court," U.S. Const. art. I, § 8, cl. 9. Accordingly, the court has subject-matter jurisdiction. Contrary to Hugo's arguments, the other constitutional and procedural violations he alleges would not (even if proven) divest the court of subject-matter jurisdiction. *See Davila v. United States*, 843 F.3d 729, 732–33 (7th Cir. 2016) (rejecting argument that "whenever a constitutional problem crops up in a case . . . the district court retroactively loses jurisdiction despite § 3231").

## II. "Defendant's Motion to Dismiss,"[2] [56]

"Defendant's motion to dismiss," [56], is denied as untimely. Federal Rule of Criminal Procedure 12(c)(1) permits the court to "set a deadline for the parties to make pretrial motions." Judge Weisman initially set a deadline of January 6, 2025. [10]. On defendant's motion, the court extended the deadline to February 25, 2025. [19]; *see* Fed. R. Crim. P. 12(c)(2) (allowing the district court to "extend or reset the deadline for pretrial motions"). Subsequently, the court (again on defendant's motion) extended the deadline to April 4, 2025. [29]. In doing so, however, it warned that "[t]his extension [was] final." *Id.* Thus, at the most recent hearing the court denied the request made by defendant (now representing himself) to extend the pretrial motions deadline. [54]. Therefore, April 4 remains the operative deadline. The arguments included in the motion are each among the "defenses, objections, and requests [that] must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3).[3] Thus, the April 4 deadline applied to the motion in its entirety. However, the motion was not filed until June 27, 2025. *See* [56].

"If a party does not meet the deadline for making a [pretrial] motion, the motion is untimely." Fed. R. Crim. P. 12(c)(3). However, "a court may consider the defense, objection, or request if the party shows good cause." *Id.* Here, Hugo has not shown good cause. At the most recent hearing, Hugo contended that he could demonstrate good cause because of his recent switch from representation by counsel to self-representation, *see Faretta v. California*, 422 U.S. 806 (1975), and because his

---

[2] The title of this motion has some words stricken out. The full title as it appears on the motion is "SUPPLEMENT TO DEFENDANT'S MOTION TO DISMISS (By Counselor Haywood)." [56] at 1.

[3] *See* Fed. R. Crim. P. 12(b)(3)(A)(ii) (preindictment delay); Fed. R. Crim. P. 12(b)(3)(A)(iii) (speedy trial rights); Fed. R. Crim. P. 12(b)(3)(A)(v) (errors in grand-jury proceedings or preliminary hearings); Fed. R. Crim. P. 12(b)(3)(A)(ii); Fed. R. Crim. P. 12(b)(3)(B)(iii) (lack of specificity); Fed. R. Crim. P. 12(b)(3)(B)(v) (failure to state an offense).

previous counsel, Ms. Haywood, had declined to adopt portions of several motions he had filed.

That argument is unpersuasive. First, the court properly declined to consider motions Hugo filed himself while he was represented by counsel. *See United States v. Campos-Rivera*, 15 F.4th 826, 829 (7th Cir. 2021); *United States v. Cross*, 962 F.3d 892, 899 (7th Cir. 2020). Second, Hugo is bound by the decisions Ms. Haywood made while she represented him. *See New York v. Hill*, 528 U.S. 110, 115 (2000) ("As to many decisions pertaining to the conduct of the trial, the defendant is 'deemed bound by the acts of his lawyer-agent . . . .'" (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962)); *Campos-Rivera*, 15 F.4th at 829 ("[P]retrial motions of this sort are matters of strategy left to the attorney."). Third, the change in representation status itself does not explain the untimeliness of Hugo's motions because it did not occur until nearly three months after the pretrial motions deadline.[4] Accordingly, "Defendant's motion to dismiss," [56], is denied as untimely

### III. "Motion to Dismiss Indictment," [57]

The "motion to dismiss indictment," [57], is also denied as untimely. The motion is untimely for the same reasons (discussed above) as "Defendant's motion to dismiss," [56]. Like "Defendant's motion to dismiss," [56], the "motion to dismiss indictment," [57], raises an argument—namely, failure to state an offense—covered by Rule 12(b)(3). *See* Fed. R. Crim. P. 12(b)(3)(B)(v). It is thus untimely, and there is no good cause to excuse the untimeliness.

The court also notes that the constitutional challenges contained in the "motion to dismiss indictment," [57], which raise arguments under the Commerce Clause and the vagueness doctrine, are squarely foreclosed by binding precedent. *See United States v. Bradford*, 78 F.3d 1216, 1223 (7th Cir. 1996) ("[W]e are convinced that the Congressional Act preventing felons from possessing firearms that had travelled in interstate commerce is a valid exercise of Congress' power under the Commerce Clause.").

---

[4] Also at the most recent hearing, Hugo contended that constitutional issues may be raised at any time. The law does not support Hugo's position. *See, e.g., United States v. Olano*, 507 U.S. 725, 731 (1993) ("'No procedural principle is more familiar to this Court than that a constitutional right,' or a right of any other sort, 'may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right . . . .'" (quoting *Yakus v. United States*, 321 U.S. 414, 444 (1944)); *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 143 (1967) ("Of course it is equally clear that even constitutional objections may be waived by a failure to raise them at a proper time . . . ."); *Michel v. Louisiana*, 350 U.S. 91, 99 (1955).

## IV. "Motion for Grand Jury Materials," [58]

Next, Hugo filed a "motion for grand jury materials." [58]. This motion asks the court to provide the following materials to Hugo:

- "Alleged Special Grand Jury transcripts for" this case;
- "Transcripts of the Proceeding where the alleged Special Grand Jury, or it's Foreperson or Deputy Foreperson, returned the True Bill (in full compliance with Rules 6 and 7) in Open Court"; and
- "The Letter and Certificate of Concurrence of all alleged 'Special Grand Jurors' whom voted for True Bill Return (Poll Count) in compliance with Rule 6(c).

*Id.* at 2–3. Hugo explains that he intends to use this material to show that the indictment in this case is fraudulent, that the required procedures for grand jury indictments were not followed in this case, and that this court lacks subject-matter jurisdiction.

The Supreme Court has "consistently . . . recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 218 n.9 (1979). "Several distinct interests are served by safeguarding the confidentiality of grand jury proceedings." *Illinois v. Abbott & Assocs., Inc.*, 460 U.S. 557, 567 n.11 (1983); *see also Douglas Oil*, 441 U.S. at 218 ("In particular, we have noted several distinct interests served by safeguarding the confidentiality of grand jury proceedings."); *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399 (1959) ("The reasons therefor are manifold and are compelling when viewed in the light of the history and modus operandi of the grand jury." (citation omitted)). For one, "[g]rand jurors would not act with that independence required of an accusatory and inquisitorial body" if "any part of [the grand jury's] proceedings" were made public. *Pittsburgh Plate Glass*, 360 U.S. at 400. For another, "testimony would be parsimonious if each witness knew that his testimony would soon be in the hands of the accused." *Id.*; *see Douglas Oil*, 441 U.S. at 219 ("First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements.").

Because of these (and other) considerations, "long-established policy . . . maintains the secrecy of the grand jury proceedings in the federal courts," *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 (1958). "Since the 17th century, grand jury proceedings have been closed to the public, and records of such proceedings have been kept from the public eye." *Douglas Oil*, 441 U.S. at 219 n.9. This "long-standing rule of common law" is "an integral part of our criminal justice system" and is "codifie[d]" in Federal Rule of Criminal Procedure 6(e). *Abbott &*

4

*Assocs.*, 460 U.S. at 566 n.11; *see Pittsburgh Plate Glass*, 360 U.S. at 399 (noting that Rule 6(e) is "declaratory" of the preexisting law). Thus, "courts have been reluctant to lift unnecessarily the veil of secrecy from the grand jury." *Douglas Oil*, 441 U.S. at 219; *see also Procter & Gamble*, 356 U.S. at 682 ("This 'indispensable secrecy of grand jury proceedings' must not be broken except where there is a compelling necessity." (quoting *United States v. Johnson*, 319 U.S. 503, 513 (1943)). "To obtain grand jury material . . . a litigant must show that the information 'is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that [the] request is structured to cover only material so needed.'" *United States v. Campbell*, 324 F.3d 497, 499 (7th Cir. 2003) (alteration in original) (quoting *Douglas Oil*, 441 U.S. at 222). To order disclosure, "[t]he district court must make the determination that the [materials are], in fact, *compellingly necessary* to the party seeking disclosure." *In re Grand Jury Proceedings, Special Sept., 1986*, 942 F.2d 1195, 1198 (7th Cir. 1991) (emphasis in original).

Hugo's motion does not satisfy this "deliberately stringent" standard. *Id*. Although he claims that disclosure of grand jury materials will uncover proof of fraud and procedural defects, he does not provide any basis for that assertion. Accordingly, Hugo's "motion for grand jury materials," [58], is denied.

V. **"Motion to Vacate Unconstitutional Detention Order, and Order of Pre-Trial Release," [59]**

Next, Hugo's "motion to vacate unconstitutional detention order, and order of pre-trial release," [59], is denied. In substance, this is an appeal of the pretrial detention order entered by the assigned magistrate judge.[5] *See* [13]. The Federal Magistrates Act authorizes magistrate judges to "issue orders . . . concerning release or detention of persons pending trial." 28 U.S.C. § 636(a)(2). However, "[i]f a person is ordered detained by a magistrate judge . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). A district court's review of a magistrate judge's detention order is de novo. *United States v. Savides*, 658 F. Supp. 1399, 1406 (N.D. Ill. 1987). The district court may either conduct a new detention hearing or rely on the record of the detention hearing conducted by the magistrate judge. *See United States v. Torres*, 929 F.2d 291, 292 (7th Cir. 1991). Here, the court will rely on the transcript of the detention hearing, [73], at which the parties agreed to proceed via proffer, *id*. at 14. The question in determining whether to issue (or uphold) a detention order is whether any "condition or combination of conditions will

---

[5] The assigned magistrate judge was not the first judge to order Hugo detained to await trial for the conduct at issue here. Prior to his federal charges, Hugo was charged in state court, the state court likewise ordered pretrial detention, and the state appellate court affirmed. *See People v. Hugo*, 2024 IL App (1st) 241983-U.

5

reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).

Here, the court concludes that no condition or combination of conditions will reasonably assure Hugo's appearance and the safety of the community. As Hugo's then-counsel conceded at the detention hearing, Hugo's criminal history is "lengthy" and "significant." [73] at 3, 20. At the hearing, the Government detailed Hugo's criminal history dating back to his first felony conviction in 1998 (for unlawful use of a weapon) to his discharge from parole in 2023. *Id.* at 19–20. To be sure, Hugo's most recent conviction is from 2011, which is many years ago. *See id.* at 16. But as the assigned magistrate judge explained, that is "only because Mr. Hugo was in prison for a very lengthy time." *Id.* at 23. Thus, the age of Hugo's convictions does not convince the court that they do not demonstrate the danger he poses to the community. Moreover, Hugo's arrest by state officials (which led to his federal charges in this case) was based on evidence that he had used a firearm to strike an individual on the head, causing serious bleeding. *Id.* at 17. Although Hugo has previously argued that there was no probable cause to believe he had committed that offense, the court has already rejected that argument.

Moreover, the court doubts whether Hugo would abide by any conditions of pretrial release the court might impose. Hugo has a history of violating court conditions. *Id.* at 23. Relatedly, Hugo's then-counsel suggested taking away Hugo's firearms as a condition of pretrial release. But Hugo was already forbidden from possessing firearms prior to his arrest. *See* 18 U.S.C. § 922(g)(1). If Hugo did not abide by that requirement when it was imposed by a federal statute, there is little reason to believe he would abide by a condition of pretrial release imposing the same requirement.

Hugo also argues that the Bail Reform Act violates the Eighth Amendment by denying some defendants access to bail. He relies on the Supreme Court's statement in *Stack v. Boyle*, 342 U.S. 1 (1951), that, since 1789, "federal law ha[d] unequivocally provided that a person arrested for a non-capital offense shall be admitted to bail," and that "[u]nless this right to bail before trial is preserved, the presumption of innocence . . . would lose its meaning." *Id.* at 4. But *Stack* predates the Bail Reform Act of 1984 by more than three decades, and the Supreme Court has since "upheld the Bail Reform Act . . . against constitutional challenge." *United States v. Montalvo-Murillo*, 495 U.S. 711, 716 (1990); *see United States v. Salerno*, 481 U.S. 739 (1987). As the Supreme Court explained in *Salerno*, "[t]he Court in *Stack* had no occasion to consider whether the Excessive Bail Clause requires courts to admit all defendants to bail, because the statute before the Court in that case in fact allowed the defendants to be bailed." 481 U.S. at 753.

For these reasons, Hugo's "motion to vacate unconstitutional detention order, and order of pre-trial release," [59], is denied.

**VI. "Motion for Hearing Date on Dirk Hugo's Motion to Vacate Unconstitutional Detention Order and for Order of Release," [77]**

Relatedly, Hugo filed a "motion for hearing date on Dirk Hugo's motion to vacate unconstitutional detention order and for order of release." [77]. In the motion, he argues that the court is "lawfully and constitutionally required" to hold a hearing on the "motion to vacate unconstitutional detention order, and order of pre-trial release," [59]. As explained above, however, a district court reviewing a magistrate judge's detention order may rely on the record of the detention hearing conducted by the magistrate judge. *See Torres*, 929 F.2d at 292. Accordingly, the request for a hearing is denied.

**VII. "Motion for Criminal Contempt Sanctions and Criminal Complaint," [62], "Judicial Notice of Prosecutorial Corruption and Criminal Complaint," [74], "Judicial Notice of Prosecutorial Corruption with Criminal Complaint," [75], "Judicial Notice of Prosecutorial and Judicial Corruption; Criminal Conspiracy to Kidnap Dirk Hugo; and Commit War Crimes, Torture, Domestic Terrorism and Treason," [76], "Judicial Notice of Prosecutorial Corruption and Criminal Complaint," [78], "Judicial Notice of Constitutional Objection to Criminal Conspiracy Against Dirk Hugo's Rights," [79], and "Judicial Notice of Prosecutorial and Judicial Corruption; Criminal Conspiracy to Kidnap Dirk Hugo; and Commit War Crimes, Torture, Domestic Terrorism and Treason," [80]**

In the next set of filings, Hugo accuses various individuals involved in this case—including federal prosecutors, magistrate judges, and the undersigned—of various crimes including (but not limited to) conspiracy, kidnapping, terrorism, and treason. *See* [62], [74], [75], [76], [78], [79], [80]. Although some of these filings do not make clear what (if any) relief they seek, others make clear that Hugo is asking to have these individuals prosecuted for their alleged crimes. But "[t]he Executive Branch—not the Judiciary—makes arrests and prosecutes offenses on behalf of the United States." *United States v. Texas*, 599 U.S. 670, 678 (2023). Thus, even leaving aside the baselessness of Hugo's accusations, the court lacks the authority to order the prosecutions Hugo requests. To be sure, the court does have "the inherent authority . . . to initiate a criminal contempt proceeding for disobedience of its order." *United States v. Providence Journal Co.*, 485 U.S. 693, 701 (1988). But Hugo has not identified an order of this court that any of the would-be defendants has violated. Accordingly, the court declines to initiate criminal contempt proceedings, and denies Hugo's motions (and, to the extent they seek any form of relief, other filings).

Although Hugo is now self-represented, the court reminds him that he nevertheless may be subject to sanctions under the court's "inherent power[] to protect [itself] from vexatious litigation" if he continues to file frivolous motions along these lines. *Alexander v. United States*, 121 F.3d 312, 316 (7th Cir. 1997). Though

Hugo has at times in the course of this case claimed that his filings, no matter how frivolous, are protected by the First Amendment right "to petition the government for a redress of grievances," U.S. Const. amend. I, he is mistaken. As the Supreme Court has explained, "baseless litigation is not immunized by the First Amendment right to petition." *Bill Johnson's Rests. v. Nat'l Lab. Rels. Bd.*, 461 U.S. 731, 743 (1983). Future filings akin to those discussed in this section may result in sanctions, including (but not limited to) a finding of contempt.

### VIII. "Motion to Produce Sealed Docket Entries for Inspection and Constitutional Compliance," [81]

Finally, Hugo's "motion to produce sealed docket entries for inspection and constitutional compliance," [81], is denied. The motion requests disclosure of various documents filed on the docket in this case. With one exception, these documents are available to Hugo's standby counsel.[6] For these documents, Hugo is advised that he may obtain them via his standby counsel. *See United States v. Kowalski*, No. 19 CR 226-1, 2022 WL 3445846, at *16 (N.D. Ill. Aug. 17, 2022) ("[Defendant] can use his standby counsel to . . . make copies of documents for him . . . .").

The one exception is the unredacted, signed indictment. "[I]t is the practice in this district to not publicly file the signed indictment in order to protect the identity of the foreperson." *United States v. Salley*, No. 19-cr-797, 2021 WL 1676397, at *3 (N.D. Ill. Apr. 28, 2021). However, an unsigned copy of the indictment is filed publicly on the docket. [1]. Disclosure of the unredacted, signed indictment requires an "order of the chief judge." N.D. Ill. L. Crim. R. 6.2. Accordingly, the court denies the motion insofar as it asks for disclosure of the unredacted, signed indictment.

In the motion, Hugo also argues that the dates of various docket entries indicate irregularities of some sort. This argument is mistaken. First, he argues that the unredacted, sealed indictment could not have been filed (as the docket shows) on December 9, 2024, because the preceding docket entry, [6], is dated December 10 and the following docket entry, [8], is dated December 19. But there is a simple explanation that is stated clearly on the docket: the unredacted, sealed indictment was filed with the Clerk of Court on December 9, and then the Clerk's office uploaded it to CM/ECF on December 11. Second, Hugo questions how the redacted copy of the indictment could have been filed before the unredacted, sealed indictment, given that the latter must be returned in open court, *see* Fed. R. Crim. P. 6(f). But after an indictment is returned in open court as required by Rule 6(f), the Clerk of Court must then upload the indictment to CM/ECF, which does not occur instantaneously.

---

[6] The court also notes that each document was filed while Hugo was represented by counsel, and that his then-counsel (who is now his standby counsel) has access to the docket in this case. Thus, Hugo's argument that the Government has failed to disclose these materials to the defense is meritless.

8

Contrary to Hugo's contention, the docket does not indicate fraud or any other irregularity.

## CONCLUSION

For the reasons explained above, each of defendant's pending motions (and, to the extent they seek relief, other filings), [55], [56], [57], [58], [59], [62], [74], [75], [76], [77], [78], [79], [80], [81], is denied.

Dated: August 20, 2025                     /s/ Martha M. Pacold